## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ELIZABETH DAVIS,** | : | **CIVIL ACTION NO. 1:13-CV-2741** |
| | : | |
| **Plaintiff** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **METROPOLITAN LIFE** | : | |
| **INSURANCE COMPANY,** | : | |
| | : | |
| **Defendant** | : | |

## <u>MEMORANDUM</u>

Plaintiff Elizabeth Davis ("Davis") filed the above-captioned action against defendant Metropolitan Life Insurance Company ("MetLife"), stating claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and bad faith under the Pennsylvania Unfair Insurance Practices Act ("UIPA"), 40 PA. CONS. STAT. § 1171.1 *et seq.*, pursuant to 42 PA. CONS. STAT. ANN. § 8371, and, alternatively, denial of benefits under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, breach of fiduciary duty under ERISA, and attorneys' fees and costs under ERISA, all in connection with MetLife's termination of Davis's long-term disability benefits. Presently before the court are MetLife's motion (Doc. 25) to set aside the default that the Clerk of Court entered against MetLife and Davis's motion (Doc. 15) for default judgment. For the reasons that follow, the court will grant MetLife's motion and deny Davis's motion.

## I.   <u>Factual Background and Procedural History</u>

At all times relevant to this action, Elizabeth Davis worked at Penn State Milton S. Hershey Medical Center ("the Medical Center") as a cardiovascular technician.  During her employment, Davis participated in the Medical Center's Cafeteria and Welfare Benefit Plan ("the plan"), which provided long-term disability ("LTD") benefits under an insurance policy that MetLife administered. On June 10, 2010, Davis submitted a claim for LTD benefits under the policy due to idiopathic hypersomnia.  MetLife approved her claim and remitted LTD benefits until December 6, 2012.  As required by the insurance policy, Davis applied for social security disability benefits from the Social Security Administration ("SSA"). The SSA determined that Davis was entitled to disability benefits as of December 2010.  (Doc. 45-2, Ex. A at 1).  As a result of this determination, MetLife reduced Davis's LTD benefits by the amount of her social security disability award.  (Doc. 28-3, Ex. C).  On December 6, 2012, MetLife concluded that Davis no longer satisfied the definition of disability under the plan and terminated Davis's LTD benefits. (<u>See</u> Doc. 28-5, Ex. E).  Davis administratively appealed MetLife's denial of benefits, and MetLife upheld its decision on April 30, 2013.  (Doc. 28-8, Ex. H).

On November 7, 2013, Davis commenced the instant action.  (Doc. 1).  She claims that the Medical Center is a state-controlled entity and therefore is not subject to ERISA.  (<u>Id.</u> ¶ 53).  Davis brings state law causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, and bad faith under the UIPA.  (<u>Id.</u> ¶¶ 57-71).  She alleges, *inter alia*, that MetLife improperly denied her LTD benefits, failed to conduct a physical examination, used medical

opinions from unlicensed physicians, ignored conflicting medical evidence from the SSA and Davis's own physician, and misrepresented that ERISA governs Davis's benefits claims.  (Id. ¶¶ 58, 67).  In the event that her insurance policy is subject to ERISA, Davis states alternative claims for violation of ERISA, breach of fiduciary duty under ERISA, and attorneys' fees and costs under ERISA.  (Id. ¶¶ 72-80).

Davis served MetLife with the complaint and summons on December 19, 2013.  (Doc. 6).  MetLife failed to respond to the complaint within the time prescribed by the Federal Rules of Civil Procedure.  On March 13, 2014, the court instructed Davis's counsel to file a request for entry of default.  (Doc. 8).  Counsel did so on March 20 (Doc. 9), and the Clerk of Court entered default against MetLife on March 26 (Doc. 11).  Davis served both documents on MetLife.  (Docs. 12-13).  On September 5, 2014, Davis moved for default judgment.  (Doc. 15).  In connection with her state law claims, Davis seeks liquidated damages in the amount of $716,544.75, $1,041.29 in costs, unliquidated damages in the amount of $3,582,723.75, and interest calculated at a statutory rate.  (Id.)

The court subsequently ordered MetLife to show cause by October 3, 2014 why it should not grant Davis's motion.  (Doc. 17).  On October 2, 2014, counsel first appeared on behalf of MetLife and moved for a one-week extension of time to respond to the show cause order.  (Docs. 18-19).  The court granted the extension.  (Doc. 23).  On October 10, 2014, MetLife responded to the order (Doc. 27), moved to set aside the entry of default (Doc. 25), and filed a brief in support of its motion and in opposition to Davis's motion for default judgment (Doc. 26).  Davis's motion for

3

default judgment and MetLife's motion to set aside the entry of default have been fully briefed and are ripe for disposition.

## II.   <u>Legal Standard</u>

Federal Rule of Civil Procedure 55(c) provides that a court may set aside an entry of default for "good cause." FED. R. CIV. P. 55(c).  A district court must consider three[1] distinct factors when determining whether to set aside a default, to wit: "(1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; [and] (3) whether the default was the result of the defendant's culpable conduct."  <u>World Entm't Inc. v. Brown</u>, 487 F. App'x 758, 761 (3d Cir. 2012) (nonprecedential) (quoting <u>United States v. $55,518.05 in U.S. Currency</u>, 728 F.2d 192, 195 (3d Cir. 1984)).

These three factors also govern the court's review of a motion for entry of default judgment.  <u>Chamberlain v. Giampapa</u>, 210 F.3d 154, 164 (3d Cir. 2000).  The decision whether to grant default judgment or to allow the action to proceed on the merits lies within the sound discretion of the district court.  <u>Barclay Transp. v. Land O'Lakes, Inc.</u>, No. 1:07-CV-02065, 2008 WL 4491932, at *2 (citing <u>$55,518.05 in U.S. Currency</u>, 728 F.2d at 194).  The Third Circuit disfavors default judgments and encourages resolution of cases on the merits.  <u>Harad v. Aetna Cas. & Sur. Co.</u>, 839 F.2d 979, 982 (3d Cir. 1988).  In a close case, therefore, "doubts should be resolved in

---

[1] Several courts in this circuit also consider a fourth factor: the effectiveness of alternative sanctions.  <u>Sourcecorp Inc. v. Croney</u>, 412 F. App'x 455, 459 (3d Cir. 2011) (nonprecedential) (quoting <u>Emcasco Ins. Co. v. Sambrick</u>, 834 F.2d 71, 73 (3d Cir. 1987)); <u>see also</u> <u>Mike Rosen & Assocs., P.C. v. Omega Builders, Ltd.</u>, 940 F. Supp. 115, 117 (E.D. Pa. 1996); <u>Accu-Weather, Inc. v. Reuters Ltd.</u>, 779 F. Supp. 801, 802 (M.D. Pa. 1991).

favor of setting aside the default and reaching the merits." Zawadski de Bueno v. Bueno Castro, 822 F.2d 416, 420 (3d Cir. 1987) (citations omitted).

## III.   Discussion

A default judgment has not yet been entered in this action.  Accordingly, the court must first consider MetLife's motion to set aside the entry of default pursuant to Federal Rule of Civil Procedure 55(c).  See Olivia B. *ex rel.* Bijon B. v. Sankofa Acad. Charter Sch., No. 14-867, 2014 WL 5639508, at *3 (E.D. Pa. Nov. 4, 2014).  The court will address each of the factors applicable to the Rule 55(c) analysis *seriatim*.

### A.   Prejudice

Setting aside an entry of default prejudices a party when "circumstances have changed since entry of the default such that plaintiff's ability to litigate its claim is now impaired in some material way or if relevant evidence has become lost or unavailable."  Accu-Weather, Inc., 779 F. Supp. at 802; accord Dizzley v. Friends Rehab. Program, Inc., 202 F.R.D. 146, 148 (E.D. Pa. 2001) (finding that prejudice exists when plaintiff's claim would be materially impaired due to loss of evidence, increased potential for fraud or collusion, or substantial reliance on the entry of default).  Requiring a party to litigate her claims on the merits does not constitute prejudice, Griffin v. Lockett, No. 1:CV-08-01120, 2009 WL 179780, at *2 (M.D. Pa. Jan. 26, 2009) (citing Accu-Weather, Inc., 779 F. Supp. at 802), nor does any delay or additional expense resulting from the denial of default judgment, see Olivia B., 2014 WL 5639508, at *6 (citations omitted).

Davis argues that she will be prejudiced if the court sets aside the default because she is no longer able to obtain current medical opinions to counter

MetLife's physician consultants or to confirm the contents of her claim file.  (Doc. 32 at 14-15).  Davis does not explain in what manner she seeks to rebut MetLife's consultants or which specific documents from her claim file are no longer available. Assuming that Davis could still submit supporting medical information after the conclusion of her administrative appeals, she does not clarify how her ability to supplement or confirm her claim file has been materially impaired *since* the entry of default.  See Paradise v. Commonwealth Fin. Sys., Inc., No. 3:13-CV-00001, 2014 WL 4717966, at *5 (M.D. Pa. Sept. 22, 2014).  Indeed, MetLife provided Davis with her complete claim file on July 19, 2013, several months before she commenced this action in November 2013.  (Doc. 38 ¶ 3; Doc. 38-2, Ex. B).[2]

Davis further contends that she will suffer prejudice if the court sets aside the default because she relies financially on LTD benefits.  (Doc. 32 at 15).  The court is not unsympathetic to Davis's financial position, but unfortunately for Davis this form of prejudice is not sufficiently distinguishable from the prejudice that attends a "[d]elay in realizing satisfaction on a claim."  See Feliciano v. Reliant Tooling Co., 691 F.2d 653, 656-57 (3d Cir. 1982).  Davis cites Frank Music Corp. v. Emerson's Pub, Inc., No. 4:08-CV-0532, 2009 WL 744964, at *1 (M.D. Pa. Mar. 18, 2009), and Platypus Wear, Inc. v. Bad Boy Club, Inc., No. 08-02662NLHAMD, 2009 WL 2147843, at *4

---

[2] Davis cites Barry Howard & Associates, Inc. v. Indiana Transportation Museum, Inc., 125 F.R.D. 487 (S.D. Ind. 1989), for the proposition that "lack of prejudice alone will not suffice to grant defendant relief where he has caused an unreasonable delay."  Id. at 491.  In Barry Howard & Associates, the court addressed the timing of defendant's motion to vacate a default judgment in the context of Federal Rule of Civil Procedure 60(b), a matter that is not at issue *sub judice*.  Accordingly, this case does not assist Davis.

(D.N.J. July 15, 2009), in support of her claim that she will incur additional damages and financial hardship if the court sets aside the default and considers the merits of her claims.  However, the defendants in these cases had not appeared or responded, and thus entry of default judgment—rather than litigation on the merits—was the only way in which plaintiffs could obtain relief.  See Frank Music Corp., 2009 WL 744964, at *1 ("If default [judgment] is denied, plaintiffs face the prejudice of being unable to proceed with this action and the potential continued infringement of their copyrighted works."); Platypus Wear, Inc., 2009 WL 2147843, at *4 ("[W]ithout this judgment, then plaintiff will be prejudiced because it has no other recourse.").  This authority is inapposite to the instant action.  The court therefore concludes that the lack of material prejudice weighs in favor of setting aside the entry of default.

### B.   Meritorious Defense

A defendant possesses a meritorious defense when the "allegations of defendant's answer, if established on trial, would constitute a complete defense to the action."  $55,518.05 in U.S. Currency, 728 F.2d at 195 (quoting Tozer v. Charles A. Krause Mill. Co., 189 F.2d 242, 244 (3d Cir. 1951)).  The defendant must set forth the basis for its defense with some specificity; a general denial of the allegations in the complaint is insufficient to set aside a default.  See Harad, 839 F.2d at 982; $55,518.05 in U.S. Currency, 728 F.2d at 195.  Courts must then examine the substance of the alleged defense.  Harad, 839 F.2d at 982.  Case law in this circuit attaches significant weight to this factor when determining whether to set aside a default.  See, e.g., Hritz v. Woma Corp., 732 F.2d 1178, 1181 (3d Cir. 1984); Olivia B., 2014 WL 5639508, at *4.

In the instant case, Davis advances state law claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and bad faith under the UIPA.  In its proposed answer, MetLife states as an affirmative defense that Davis's state law claims are preempted by ERISA (Doc. 31-1, Ex. A at 12), which "supersede[s]" any state law claims that "relate to" any covered and nonexempt employee benefit plan.  29 U.S.C. § 1144(a).  A state law "relates to" an employee benefit plan "if it has a connection with or reference to such a plan."  Egelhoff v. Egelhoff _ex rel._ Breiner, 532 U.S. 141, 147 (2001) (quoting Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96-97 (1983)).

In Pilot Life Insurance Co. v. Dedeaux, 481 U.S. 41 (1987), the Supreme Court considered whether ERISA preempts state law causes of action for breach of contract, breach of fiduciary duty, and fraud in the inducement in connection with an insurance company's alleged improper processing of LTD benefits claims under an insured employee benefit plan.  Id. at 43-44.  Noting the "expansive sweep" of ERISA's preemption clause, the Court held that the state law claims at issue were expressly preempted by ERISA and not otherwise subject to an exception for laws that "regulate[] insurance."  Id. at 47-48, 57.  Consistent with this precedent, the Third Circuit has observed that "suits against HMOs and insurance companies for denial of benefits, even when the claim is couched in terms of common law negligence or breach of contract, have been held to be preempted by § 514(a) [of ERISA]."  Pryzbowski v. U.S. Healthcare, Inc., 245 F.3d 266, 278 (3d Cir. 2001).  With respect to Davis's claim for violation of Pennsylvania's insurance bad faith statute pursuant to 42 PA. CONS. STAT. ANN. § 8371, the Third Circuit has held that section

8371 is subject to conflict preemption or, alternatively, express preemption under ERISA.  Barber v. Unum Life Ins. Co. of Am., 383 F.3d 134, 138-44 (3d Cir. 2004).  To the extent that Davis's employee benefit plan is subject to ERISA, her state law claims are likely preempted.

Davis claims that MetLife cannot rely on ERISA preemption because (1) its deemed admissions foreclose this defense and (2) it failed to raise this defense in a responsive pleading.  (Doc. 32 at 7).  On May 6, 2014, before MetLife's counsel entered an appearance in this action, Davis served MetLife with requests for admission.  Among other requests, Davis sought an admission that "Met Life insures Plaintiff Elizabeth Davis . . . under a long term disability insurance policy issued to her employer Penn State's The Milton S. Hershey Medical Center, a state owned and controlled hospital."  (Doc. 16-2, Ex. A ¶ 1).  MetLife failed to respond to Davis's requests for admission within thirty days, which rendered the requests admitted.  FED. R. CIV. P. 36(a)(3).  Admissions are "conclusively binding" on the admitting party and carry significant weight in the litigation.  McNeil v. AT & T Universal Card, 192 F.R.D. 492, 494 n.4 (E.D. Pa. 2000) (citing Airco Indus. Gases, Inc. v. Teamsters Health & Welfare Pension Fund of Phila. & Vicinity, 850 F.2d 1028, 1036 (3d Cir. 1988)).

A court may, on motion, permit admissions to be withdrawn or amended. FED. R. CIV. P. 36(b).  MetLife has not formally moved to withdraw its admissions pursuant to Rule 36(b) but explicitly requests leave to serve its proposed responses to Davis's requests for admission in connection with its motion to set aside the default.  (Doc. 25 at 8).  Accordingly, the court will construe MetLife's filing in

9

relevant part as a motion to withdraw its deemed admissions pursuant to Rule 36(b) and serve delayed responses to Davis's requests for admission.  See, e.g., Williams v. Boulevard Lines, Inc., No. 10 CIV. 2924 DF, 2013 WL 1180389, at *7 & n.6 (S.D.N.Y. Mar. 12, 2013) (interpreting defendant's amended response to plaintiff's requests for admission, which it attached to its motion for summary judgment, as a request to withdraw its prior admissions, and noting that a formal motion to withdraw is not always required (citations omitted)).  Withdrawal of deemed admissions is warranted when "(1) the presentation of the merits will be subserved thereby and (2) the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits." Coca-Cola Bottling Co. of Shreveport v. Coca-Cola Co., 123 F.R.D. 97, 103 (D. Del. 1988) (citing FED. R. CIV. P. 36(b)).  Courts have "great discretion" to permit the withdrawal or amendment of admissions.  United States v. Branella, 972 F. Supp. 294, 301 (D.N.J. 1997).

Pursuant to Rule 36(b), the court shall strike MetLife's admissions and shall permit the service of delayed responses.  The admissions at issue are dispositive of Davis's state law claims.  Not only does Davis request admission that the Medical Center is a public entity, but she also seeks admission that MetLife beached the terms of the plan, breached its duty of good faith and fair dealing, and violated the UIPA.  (See Doc. 16-2, Ex. A ¶¶ 3, 5, 8).  Permitting MetLife to argue that the plan is subject to ERISA will facilitate the resolution of this matter on the merits.  See Pritchard v. Dow Agro Sciences, 255 F.R.D. 164, 172-74 (W.D. Pa. 2009) (finding that the admitting party satisfied the first prong of the Rule 36(b) test in part on the

grounds that the subject matter of the admission addressed the merits of the party's case and that upholding the admission would preclude the party from litigating the action).  Relying on <u>Petrunich v. Sun Building Systems, Inc.</u>, No. 3:CV-04-2234, 2006 WL 2788208 (M.D. Pa. Sept. 26, 2006), Davis argues that the presentation of the merits will not be advanced by allowing MetLife to file late responses to her requests for admission because the late responses would contradict the factual allegations in her complaint, which MetLife admitted when it failed to serve a responsive pleading.  <u>See</u> <u>id.</u> at *4 ("Allowing Defendants to file late responses would permit Defendants to advance a position contrary to facts already admitted [in the complaint].").  To be sure, allegations in a complaint, other than those relating to the amount of damages, are deemed admitted if the defendant fails to deny them in a timely fashion.  FED. R. CIV. P. 8(b)(6).  However, <u>Petrunich</u> is distinguishable from this case in that it considered the appropriateness of withdrawal of deemed admissions at the summary judgment stage—after defendants appeared and after discovery concluded—rather than when the defendant first appears and seeks to set aside an entry of default.  Moreover, Davis alleges that MetLife's plan is not subject to ERISA *and*, in the alternative, is subject to ERISA.  (<u>See</u> Doc. 1 ¶¶ 53, 72).  Paradoxically, MetLife could only respond to Davis's requests for admission by denying facts pertinent to one of the alternative theories of liability.  Under the circumstances, <u>Petrunich</u> does not preclude withdrawal of MetLife's deemed admissions.

Furthermore, Davis has not demonstrated that she would be prejudiced by withdrawal of the admissions.  Prejudice in this context relates to "the difficulty a

party may face in proving its case because of the sudden need to obtain evidence required to prove the matter that had been admitted." <u>Coca-Cola Bottling Co.</u>, 123 F.R.D. at 106 (citations omitted).  Davis argues that she would suffer prejudice if the court withdrew the admissions because she relied on MetLife's admissions in moving for default judgment, because late responses to the requests for admission would cause continued financial hardship, and because Davis would have to conduct discovery based on MetLife's ERISA preemption defense.  (Doc. 32 at 10-11).  However, Davis cites no relevant authority for the proposition that reliance on MetLife's deemed admissions in moving for default judgment constitutes prejudice.[3]  As explained *infra*, any such prejudice will be mitigated by the court's directive that MetLife compensate Davis for expenses incurred in pursuing default judgment.  Finding that the presentation of the merits will be advanced and that

---

[3] <u>Petrunich</u>'s observation that the plaintiff was justified in relying on the defendants' admissions when moving for summary judgment, 2006 WL 2788208 at *4, is inapposite to the instant matter given the markedly different procedural posture of this action.

Davis will not be prejudiced, the court shall permit MetLife to withdraw its deemed admissions and serve its late responses on Davis.[4]

Turning to the merits of MetLife's defense, Davis does not dispute that ERISA, if applicable, would preempt her state law claims. Rather, she argues that because the Medical Center is a state-controlled hospital, ERISA does not apply to its employee benefit plans. (Doc. 32 at 11-13). Indeed, ERISA expressly exempts from coverage any "governmental plan." 29 U.S.C. § 1003(b)(1). The Act defines a "governmental plan" as "a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing." Id. § 1002(32). In support of her position, Davis submits evidence that Penn State's medical school and teaching hospital are closely related, that Penn State retains

---

[4] Davis further argues that MetLife waived its ERISA preemption defense by failing to raise it in a responsive pleading. (Doc. 32 at 13-14). To the extent that ERISA preemption, as an affirmative defense, is generally waived if not timely interposed in a responsive pleading, compare Minchella v. Sun Life Assurance Co. of Can., No. 13-3823, 2013 WL 5330171, at *2 & n.14 (E.D. Pa. Sept. 23, 2013), with Sultan v. Lincoln Nat'l Corp., No. CIV 03-5190 (JBS), 2006 WL 1806463, at *13 (D.N.J. June 30, 2006), the court observes that setting aside an entry of default will provide the defendant with an opportunity to file an answer, including appropriate affirmative defenses. See, e.g., Barclay Transp., 2008 WL 4491932, at *3-4, *6 (granting defendant's motion to set aside entry of default and permitting defendant to file an answer containing meritorious affirmative defenses). Contrary to the Davis's position (Doc. 16 at 8), the fact that a party failed to respond to a pleading and other filings does not necessarily foreclose that party from demonstrating a meritorious defense when moving to aside a default. Cf. Broad. Music, Inc. v. Kujo Long, LLC, No. 1:14-CV-00449, 2014 WL 4059711, at *2 (M.D. Pa. Aug. 14, 2014) (finding that defendants did not assert a meritorious defense in the context of a motion for default judgment when defendants never appeared or defended themselves in the action).

some degree of control over the management of the Medical Center, and that the Medical Center's mission is aligned with that of Penn State.  (See Doc. 32 at 12-13).

MetLife, by contrast, argues that the Medical Center is a private institution and is therefore subject to ERISA.  (Doc. 26 at 7).  MetLife submits a declaration from the benefits manager of the Medical Center, who declared that the Medical Center is a private entity and that the plan is regulated by ERISA.  (Doc. 29 ¶ 2). MetLife also provides the court with a certificate of insurance for the Medical Center's LTD benefit plan and the Medical Center's federal Form 5500, both of which indicate that the plan is subject to ERISA.  (Docs. 29-1 to 29-3).  Finally, MetLife cites decisions from this court assuming or implying by analogy that the Medical Center's employee benefit plans are governed by ERISA.  (Doc. 37 at 7-8).

Davis correctly observes that an employer's classification of its employee benefit plan as an ERISA plan does not make it so.  See Stern v. Int'l Bus. Machs. Corp., 326 F.3d 1367, 1374 (11th Cir. 2003) ("[E]ven if [an employer] has treated the Program as an ERISA plan with respect to government filings, its mere labeling of the plan should not determine whether ERISA applies.").  Moreover, the court agrees with Davis that MetLife has not, at this juncture, provided "definitive or sufficient proof" that the plan is subject to ERISA.  (See Doc. 32 at 12).  But MetLife need not conclusively establish that ERISA governs the plan to prevail on its motion to set aside the default, only that its defense is meritorious.  The court finds that MetLife has satisfied its burden of setting forth with requisite specificity the basis for a defense that, *if established on trial*, would dispose of Davis's state law claims.  See $55,518.05 in U.S. Currency, 728 F.2d at 195.

14

With respect to Davis's alternative claims under ERISA, MetLife alleges in its proposed answer that its decisions regarding Davis's LTD benefits claims were reasonable, supported by substantial evidence, and neither arbitrary nor capricious. (Doc. 31-1, Ex. A at 11).  The Supreme Court has clarified that district courts must generally review an employee benefit plan administrator's denial of benefits under a *de novo* standard, unless the plan accords the administrator discretionary authority to determine eligibility for benefits under the plan.  Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 111 (2008) (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109-15 (1989)).  In the latter scenario, courts should apply an abuse of discretion standard of review.  Id.[5]  Under this deferential approach, "the plan administrator's interpretation of the plan 'will not be disturbed if reasonable.'" Conkright v. Frommert, 559 U.S. 506, 521 (2010) (quoting Firestone, 489 U.S. at 111).

In the instant matter, the certificate of insurance for the plan indicates that the plan administrator has discretionary authority to interpret the terms of the plan and determine eligibility for benefits under the plan, which suggests that a deferential standard of review is appropriate.  (See Doc. 29-2, Ex. A at 29).  MetLife avers that its decision to terminate Davis's LTD benefits was based on a full review of Davis's claim file and the medical opinions of physician consultants.  (Doc. 26 at 10).  Davis alleges in her complaint that MetLife violated ERISA by, *inter alia*, improperly denying her benefits, but she does not directly address MetLife's

---

[5] Interestingly, the Third Circuit has observed that, in the ERISA context, the abuse of discretion standard of review is functionally equivalent to an arbitrary and capricious standard.  Estate of Schwing v. The Lilly Health Plan, 562 F.3d 522, 526 n.2 (3d Cir. 2009).

additional defense.[6]  MetLife's proposed answer raises scant specific facts regarding

its decision to terminate Davis's benefits, but the court cannot conclude that

MetLife's proposed defense against Davis's ERISA claims is "facially

unmeritorious."  See Emcasco Ins. Co., 834 F.2d at 74.  MetLife's proposed defenses,

if proved, would constitute a complete defense to Davis's claims.  Hence, the court

finds that they are sufficiently meritorious—in the present procedural context—and

counsel in favor of setting aside the entry of default.

### C.   Culpable Conduct

A defendant's conduct in failing to defend an action is culpable when it acts

"willfully" or in "bad faith."  Chamberlain, 210 F.3d at 164 (quoting Gross v. Stereo

Component Sys., Inc., 700 F.2d 120, 124 (3d Cir. 1983)).  Mere negligence does not

constitute culpable conduct.  Hritz, 732 F.2d at 1183.  A "serious breakdown in

communication" among counsel for a party supports a finding of excusable neglect.

Zawadski, 822 F.2d at 421 (quoting Gross, 700 F.2d at 124).  However, a "reckless

disregard for repeated communications from plaintiffs and the court," coupled with

indicia of other objectionable behavior, may rise to the level of culpable conduct.

Id.[7]

---

[6] The court acknowledges that Davis's motion for default judgment seeks relief only with respect to her state law claims.  (See Doc. 32 at 7 n.3).

[7] In Hritz, the Third Circuit found evidence of culpable conduct when the defendant manufacturer failed to respond to the suit until more than four months after entry of default judgment and "disregard[ed] the possibility of injuries" by failing to implement an internal procedure for addressing claims stemming from a malfunctioning machine.  732 F.2d at 1180, 1183-84.

In the case *sub judice*, Davis filed her complaint on November 7, 2013.  When MetLife failed to file an answer or otherwise respond to the complaint, Davis sought and obtained an entry of default against MetLife on March 26, 2014.  After continued inaction from MetLife, Davis moved for default judgment on September 5, 2014.  MetLife failed to respond to the motion.  It was only after the court ordered MetLife to show cause by October 3, 2014 why the court should not grant Davis's motion that counsel first appeared on behalf of MetLife.  Davis emphasizes that, prior to counsel's appearance, she served MetLife with at least seventeen separate notices of filings.  (Doc. 32-1, Ex. 1 ¶ 22).  MetLife does not dispute that it was properly served.  (Doc. 30 ¶ 2).  Its corporate counsel submits that, due to "mistake, inadvertence and/or oversight," MetLife failed to refer this action to outside counsel until October 2, 2014.  (Id.)  This error, according to MetLife, was neither intentional nor part of a strategic decision to delay this action.  (Id. at ¶ 3).

Davis does not contend that MetLife's inaction was willful or taken in bad faith.  Rather, she argues that MetLife acted with reckless disregard in failing to respond to this litigation.  (Doc. 32 at 3-4).  Her principal authority is Nationwide Mutual Insurance Co. v. Starlight Ballroom Dance Club, Inc., 175 F. App'x 519 (3d Cir. 2006), a nonprecedential Third Circuit opinion in which the court concluded that the defendant's conduct was culpable when it received all relevant case-related correspondence but failed to take any action until after the district court had entered a default judgment.  Id. at 521, 523.  This court notes that Nationwide Mutual cited Hritz for the proposition that reckless disregard for multiple case-related communications can amount to culpable conduct but did not explicitly

address, as the court did in <u>Hritz</u>, other objectionable conduct on the part of the defendant that, together with its reckless disregard, established culpability. Moreover, <u>Nationwide Mutual</u> considered culpability in the context of a motion to open a default judgment, in which courts apply the relevant factors more stringently than in the context of a motion to set aside an entry of default.  <u>See</u>, <u>e.g.</u>, <u>Feliciano</u>, 691 F.2d at 656; <u>Rockwell Transp. Servs., Inc. v. Int'l Printing & Envelope Co.</u>, No. 02-724, 2002 WL 1018928, at *1 (E.D. Pa. May 20, 2002); <u>Mike Rosen & Assocs.</u>, 940 F. Supp. at 120.  Accordingly, <u>Nationwide Mutual</u> offers Davis only limited support here.

Davis argues that MetLife's conduct was culpable because it failed to act promptly in moving to set aside the entry of default.  (Doc. 32 at 4-5 (citing <u>Rockwell</u>, 2002 WL 1018928 at *1 ("The party who seeks to set aside the entry of default must act with reasonable promptness.")))  Davis's argument has facial merit.  The court is troubled by MetLife's lengthy period of inaction between the commencement of this action and its response to the court's show cause order. Nevertheless, the court accorded MetLife a final opportunity to avoid default judgment by issuing a show cause order (Doc. 17), to which MetLife timely responded (Doc. 23; Doc. 27).[8]

---

[8] Davis contends that MetLife's response to the show cause order incorporated by reference its brief in support of its motion to set aside the default in violation of L.R. 7.8(a).  (Doc. 32 at 7 n.4).  The court finds that MetLife's response summarizes certain aspects of arguments it makes elsewhere but does not improperly incorporate its supporting brief.

MetLife's prolonged delay presents a close question.  The court ultimately concludes, however, that the record does not support a finding of culpable conduct. MetLife's submissions evidence grossly negligent behavior but not an intentional or strategic decision to refrain from defending itself in this litigation.  See Gross, 700 F.2d at 124 (acknowledging the possibility of "gross—almost willful—neglect" but holding that the record did not support an inference of willfulness or bad faith when defendant's local counsel and general counsel failed to communicate with each other or timely respond to the complaint); Stone v. Brennan, No. 06-468, 2006 WL 2092583, at *2 (E.D. Pa. July 25, 2006) (finding negligence but no culpability when defendant inadvertently failed to forward the complaint to its insurance carrier); cf. Am. Alliance Ins. Co. v. Eagle Ins. Co., 92 F.3d 57, 61 (2d Cir. 1996) (concluding that a filing mistake by a clerk of defendant's in-house counsel, which resulted in several months of inaction, constituted gross negligence, and weighed against granting relief, but not willful or bad faith conduct).  Moreover, the court cannot say that the circumstances of MetLife's default, in connection with its failure to respond to repeated communications, compels a finding of culpability.  See Hritz, 732 F.2d at 1183-84.  The court has considered MetLife's status as a sophisticated party, see Turner v. Corr. Med. Servs., Inc., 262 F.R.D. 405, 409-10 (D. Del. 2009) (noting that when determining whether a defendant's failure to respond to a certain court order represents culpable conduct, it is appropriate to take into account the defendant's status as a "sophisticated litigant"), and admonishes MetLife for failing to

implement procedures to ensure that it referred this action to counsel in a timely manner, especially after proper service and multiple notices from Davis.[9]

Notwithstanding MetLife's inaction and its status as a sophisticated party, the court must resolve close calls in favor of setting aside the default.  Gross, 700 F.2d at 122.  Although MetLife's conduct in this litigation does not clearly weigh in favor of setting aside the default, the court finds that it possesses meritorious defenses and that Davis will not be prejudiced by litigating this case on the merits. As explained *infra*, sanctions other than refusing to set aside the default are appropriate under the circumstances.  Accordingly, the court accepts MetLife's showing with respect to the show cause order and holds that "good cause" exists to set aside the entry of default.  See FED. R. CIV. P. 55(c).[10]

### D.    Alternative Sanctions

When determining an appropriate sanction, courts may consider, *inter alia*, the seriousness of the sanctionable conduct, the damage caused by the conduct, the effect of the conduct on the administration of justice, and the sanctioned party's ability to pay.  Agnew v. E*Trade Sec. LLC, 811 F. Supp. 2d 1177, 1185 (E.D. Pa. 2011).  The purpose of an alternative sanction in this context is to compensate

---

[9] Citing Reid v. Liberty Consumer Discount Co. of Pennsylvania, 484 F. Supp. 435 (E.D. Pa. 1980), and various decisions from outside this circuit, Davis contends that MetLife's "self-serving" statement that its failure to respond was a "mistake" does not demonstrate excusable neglect.  (Doc. 32 at 4-6).  The court agrees that MetLife's justification for its delay is quite limited but nevertheless finds it minimally sufficient to satisfy its burden in light of the foregoing authority.

[10] In light of this conclusion, the court must deny Davis's motion for default judgment.  See Stone, 2006 WL 2092583, at *2 ("Since entry of default is a prerequisite to granting default judgment, the Court's decision to set aside entry of default compels the Court to deny [plaintiff's] Request for Default Judgment.").

plaintiff and to deter such conduct in the future.  <u>Airtech v. Born Envtl. Servs., Inc.</u>, No. 02-8524, 2003 WL 22097489, at *2 (E.D. Pa. May 27, 2003).

The court cannot condone MetLife's conduct in failing to appear in this action until October 2, 2014—one day prior to the deadline to respond to the court's show cause order—despite the court's finding that the balance of the foregoing factors weighs in favor of setting aside the entry of default.  MetLife is a sophisticated, international insurance provider yet failed to implement basic procedures to ensure compliance with its litigation obligations.  Moreover, this noncompliance is not an isolated incident.  MetLife has defaulted in at least two other actions in the last several years for failure to plead or otherwise defend itself. (Doc. 33-1, Ex. A; Doc. 33-2, Ex. B).  By defaulting in the instant matter, MetLife has delayed the ultimate resolution of this action and has forced both Davis and the court to expend unnecessary resources.

Given that MetLife's conduct does not rise to the level of bad faith, the court finds that a monetary sanction is appropriate under the circumstances.  <u>Cf.</u> <u>Griffen v. Alpha Phi Alpha, Inc.</u>, No. 06-1735, 2006 WL 3302438, at *4 (E.D. Pa. Nov. 9, 2006) (imposing a monetary sanction rather than refusing to set aside the default because the relevant defendant's conduct did not constitute flagrant bad faith).[11]  MetLife

---

[11] To the extent that a few courts in this circuit have been reluctant to impose punitive sanctions absent a showing of bad faith, <u>see</u>, <u>e.g.</u>, <u>Tecmarine Lines, Inc. v. CSX Intermodal, Inc.</u>, No. 01-CV-1658, 2001 WL 950155, at *4 (E.D. Pa. Aug. 13, 2001) ("[C]ourts generally refrain from imposing alternative sanctions when there is no evidence of bad faith or willfulness, or when default was entered due to a procedural error rather than a penalty."), the court finds that the unique facts of this case warrant a monetary sanction.  The court notes that MetLife does not contest the propriety of a modest monetary sanction.  (<u>See</u> Doc. 26 at 6).

shall compensate Davis for the reasonable fees and costs incurred in obtaining the entry of default, moving for default judgment, replying to MetLife's response to the court's show cause order, and opposing MetLife's motion to set aside the entry of default.  See Airtech, 2003 WL 22097489, at *2 ("In an appropriate case, a Court may, as an alternative sanction, order a defendant to reimburse the plaintiff for the expenses that it has incurred in prosecuting a motion for default judgment."); Int'l Bhd. of Elec. Workers, Local Union No. 313 v. Skaggs, 130 F.R.D. 526, 530 (D. Del. 1990) (determining that counterclaim defendant should pay the reasonable fees that counterclaim plaintiff incurred in obtaining the default and opposing the motion to set aside the default).  The court believes that this sanction effectively addresses MetLife's grossly negligent conduct.  Further, the court will require that MetLife fully comply with its litigation obligations moving forward.

## IV.    Conclusion

For all of the foregoing reasons, the court will grant MetLife's motion to set aside the entry of default, deny Davis's motion for default judgment, impose a monetary sanction on MetLife, and grant MetLife leave to file its proposed answer and proposed responses to Davis's statement of material facts and to serve its proposed responses to Davis's requests for admission.  An appropriate order will issue.

 /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:      February 11, 2015